IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTY NURSING CENTER
OF WILLARD, INC.,
                Plaintiff,        Case No. 3:07 CV 390

   -vs-

                                     MEMORANDUM OPINION

UNITED FOOD AND COMMERCIAL
WORKERS UNION LOCAL 911,

                Defendant.

KATZ, J.

This matter is before the Court on Local 911 United Food & Commercial Workers Union's ("Defendant") motion for summary judgment (Doc. 9) and Liberty Nursing Center of Willard, Inc. d/b/a Hillside Acres' ("Plaintiff") cross-motion for summary judgment (Doc. 11-12). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Defendant represents employees and bargaining unit members at Plaintiff's workplace. On November 1, 2005, a union representative filed a class action grievance alleging that Plaintiff was overcharging union members for dental and vision insurance. An arbitrator, chosen by a process agreed to by the parties under the collective bargaining agreement ("CBA"), heard the grievance on August 23, 2006. On November 6, 2006, the arbitrator issued an award sustaining the grievance. On February 16, 2007, this Court took jurisdiction over Plaintiff's civil action in the form of a motion to vacate the arbitrator's award (previously filed in Huron County Common Pleas Court and removed to federal district court on February 12, 2007).

At issue before the arbitrator was Article 27 ("Health Insurance") of the CBA, provisions of which provide as follows:

> Section 3: <u>Plan Description:</u> In advance of enrollment, the business office will provide details of the health insurance plan as described in the summary plan description, along with information on cost of coverage to eligible employees.
>
> ***
>
> Section 6: <u>Employee Premium Payroll Deduction Amounts per pay:</u>
> ***
> Dental/Vision
>
> | | |
> |---|---|
> | Employee | $14.00 per pay |
> | Employee + Children | $31.00 per pay |
> | Employee + Spouse | $30.00 per pay |
> | Family | $47.00 per pay |
>
> ***
>
> Section 7: <u>Maintenance of Benefits:</u> The Employer shall have the right to change carriers for the Health Insurance & Life Insurance Plans even though this may result in some minor changes to the benefits, so long as the total out of pocket cost to the employee is not significantly increased and there is no substantial reduction in benefit levels under the new plan. The Employer will meet with the Union to discuss any changes to the Plans before effecting a change in carriers.

Arbitrator's Award, Doc. 11-3 at 2-3.

The arbitrator heard testimony from employee and union member Sandy Grossman, who was on the single employee plan and testified that: her pay was deducted at a rate of $14.00 per pay for dental/vision coverage as of July 26, 2003, prior to the enactment of the CBA; on November 13, 2004, after the CBA, $10.27 was deducted; on October 15, 2005, the rate rose to $14.00 per pay; and on the next pay period, October 29, 2005, after lodging a complaint, her rate dropped to $10.00 per pay and carried over as such into 2006. Award, Doc. 11-3 at 4. Another employee, Kristina Thompson, who was on the employee plus spouse plan, testified that, after

being charged $38.50 per pay through October of 2005, she switched to the single plan and was charged $14.00 per pay. *Id.* at 4-5. Defendant argued that the prices employees were paying for dental and vision coverage exceeded the amount charged by Plaintiff's insurance carrier for these coverages.

The arbitrator also considered other evidence and testimony from Plaintiff that the CBA allowed it to charge up to the amounts listed in Section 6, and that it offered to compensate Thompson for her overpayment. The arbitrator nevertheless questioned how Plaintiff could deduct different amounts from different member employees who were under the same contract and enrolled in the same plan. The arbitrator took this as evidence of a latent ambiguity in the language of Section 6, and took Plaintiff's course of conduct in raising and decreasing rates as evidence in support of Defendant's position. *Id.* at 7-8. Plaintiff argued then, and the main thrust of their argument before this Court remains, that the CBA provides very specifically for certain plans to be charged a certain amount per pay period. Plaintiff argues that it is entitled to charge those amounts because they are clearly and unambiguously in the CBA. To read anything else into the CBA, as Plaintiff alleges the arbitrator did, would be, according to Plaintiff, to amend the explicitly agreed-upon terms of the CBA.

**II. Standard of Review and Discussion**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

More specifically, before this Court can make a determination on the merits of the parties' arguments with regard to interpretation of the CBA, the Court must first decide whether to defer to the arbitrator's decision.  Generally, a court must give the decisions of arbitrators a high degree of deference with regard to the merits of the matter, *United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960), playing a limited role when a losing party asks the court to vacate an award, *United Paper Workers International Union v. Misco, Inc.*, 484 U.S. 29, 31 (1987).  The Sixth Circuit has recently laid out the parameters of a court's role in reviewing an arbitrator's decision.  Federal courts shall ensure that a challenged arbitration award grew out of a legitimate process, that the prevailing party did not obtain the decision through fraud, that the arbitrator did not suffer from a conflict of interest or exercise dishonesty, and that the arbitration award did not merely reflect the arbitrator's own notion of industrial justice.  *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007).  A permissible award is one that "draws its essence from the contract" and an impermissible award is one that "simply reflect[s] the arbitrator's own notion[] of industrial justice."  *Id.* (citing *Misco*, 484 U.S. at 38, and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).  The inquiry is "based on whether 'the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Id*.  The Circuit, sitting en banc, framed a court's inquiry and identified the parameters of that approach as follows:

> [The court] will consider the questions of "procedural aberration" that *Misco* and *Garvey* identify. *Misco*, 484 U.S. at 40 n. 10, 108 S.Ct. 364. Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial

> intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.
>
> These relatively straightforward inquiries, we acknowledge, mask a harder question: What role, if any, still remains for a court to consider the arbitrator's resolution of the merits in determining whether he was "arguably construing" the contract? The union, supported by the national AFL-CIO, argues that the court's view of the merits has nothing to do with this process-driven question. So long as the arbitrator purported to construe the contract, that is the end of the matter. [Michigan Family Resources, Inc.] argues by contrast that federal courts always must consider the merits of a dispute to determine whether the arbitrator was arguably construing the contract.
>
> We respectfully disagree with both of them. The [Supreme] Court's repeated insistence that the federal courts must tolerate "serious" arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule. At the same time, we cannot ignore the specter that an arbitration decision could be so "ignor[ant]" of the contract's "plain language," *Misco*, 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be "so untethered to" the terms of the agreement, to borrow a phrase from our Circuit Justice, *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting), that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that. *Cf. Warrior & Gulf*, 363 U.S. at 582-83, 80 S.Ct. 1347 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

*Michigan Family Resources*, 475 F.3d at 753 (Sutton, J., writing for en banc court).[1]

---

[1] Defendant further points to Ohio law as instructive on this issue, although this Court has no occasion now to apply it:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
>
> (A) The award was procured by corruption, fraud, or undue means.
>
> (B) There was evident partiality or corruption on the part of the

(continued...)

Plaintiff argues that the arbitrator in the case before this Court was not engaged in interpretation at all, in that she considered outside evidence to vary the specific, indeed numerical, terms of the CBA. Defendant argues that the arbitrator was interpreting the contract and, after determining that a latent ambiguity existed with regard to the dental/vision insurance costs, used the parties' actions to arrive at the intent of the CBA.

Few words, phrases, or provisions could be as clear as the cut-and-dry numerical language at issue in this matter. Basically, the arbitrator determined that "$14.00" could mean something other than fourteen single primary units of United States currency. This is surely an absurd result, one that meets the "serious arbitral error" standard because it constitutes a determination "that is so ignorant of the contract's plain language," which allows Plaintiff to charge a numerically specific amount for dental and vision plans, that the arbitrator was not involved in contract interpretation at all. The arbitrator in this matter was not actually interpreting the "$14.00" (and other dollar amount) figures, but rather was relying on the testimony of two employees to require the employer to charge an amount less than that provided for in the CBA. In other words, there

---

[1](...continued)
        arbitrators, or any of them.

        (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

        (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Ohio Rev. Code § 2711.10.

was no basis in the text of the CBA for the arbitrator's decision. The arbitrator's award was based purely on comparing testimony of two individuals against the argument of the company that, while errors do occur, the text of the contract is what ultimately controls the prices.

This was not merely a "serious", "improvident", or "silly . . . error." *Michigan Family Resources*, 475 F.3d at 753.

> This view of the "arguably construing" inquiry no doubt permit[s] only the most egregious awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements . . . , and a view whose imperfections can be remedied by selecting better arbitrators.

*Michigan Family Resources*, 475 F.3d at 753-54. The arbitrator here was not even arguably construing the contract. The numerical language of the contract could hardly have been clearer, and the arbitrator based her decision on testimony wholly unrelated to the text of the CBA. This is the sort of egregious arbitration that this Court is authorized to invalidate, even in light of the strong deference owed to arbitrators. This Court orders that the arbitrator's award be overturned, and that Plaintiff be entitled to charge up to the costs provided in the CBA and cited above.[2]

### III. Conclusion

Plaintiff's motion is hereby granted (Doc. 9), and Defendant's motion is hereby denied (Doc. 11).

---

[2] As a contrast to this matter, the Court directs the parties' attention to another matter before this Court, a judgment in which was issued the same day as this order in this matter. In *ConAgra Foods, Inc. v. Local 911*, Case No. 07-CV-00602-DAK, a different arbitrator issued an award relating to the CBA's discrimination clause. The arbitrator's award in that case was at least arguably based on an interpretation of the CBA's discrimination clause, and the company's arguments could not establish that the arbitrator had gone beyond his authority and issued a decision not grounded in the language of the CBA. This case and that one fall on opposite sides of the line of deference drawn in *Michigan Family Resources*, supra.

IT IS SO ORDERED.

                                            s/ *David A. Katz*
                                            DAVID A. KATZ
                                            U. S. DISTRICT JUDGE